LEIGH M. CLARK, Retired Circuit Judge.
A jury found defendant-appellant guilty of possession of heroin. The court fixed his punishment at eight years imprisonment in the penitentiary and sentenced him accordingly.
Defendant was represented on the trial by employed counsel. On appeal he is represented by different counsel, appointed by the court on a showing of defendant’s indi-gency.
Twenty-nine capsules filled with a white powdery substance were found in the front seat of an automobile being driven by defendant immediately after he had stopped *1164 the automobile, opened the door on the driver’s side and stepped out of the automobile to talk with Officer Mayo of the Mobile Police Department, about 2:00 A.M., July 23, 1976. One capsule was in that part of the seat where the defendant had been sitting. The other twenty-eight capsules were lying on a “blue face cloth” between the driver’s seat and the seat of another occupant of the front seat of the automobile, on that part of the front seat where the arm rest would have been if it had not been raised or folded up as it was at the time. Some of the contents of about half of the capsules was analyzed and determined to be heroin. Between the sun visor on the driver’s side and the roof of the automobile there was a hypodermic syringe with its two parts separated. About the person of the other occupant of the front seat of the automobile there was another hypodermic syringe.
According to the briefs of parties, the only issue on appeal is whether the war-rantless taking of the capsules from the front seat of the automobile constituted an unreasonable search or seizure in violation of appellant’s rights as safeguarded by the Fourth Amendment to the Constitution of the United States and by Article 1, § 5 of the Constitution of Alabama of 1901. Defendant raised the point by a motion to suppress evidence as to the capsules and their contents, which motion was overruled.
The evidence on' the motion to suppress consisted only of the testimony of Officer Mayo and testimony of defendant, who did not testify during the trial of the case.
Officer Mayo testified that he was on duty at the time in a “marked” police automobile and had observed the automobile being driven by defendant traveling at a high rate of speed, crossing over two solid yellow lines and passing two other automobiles. He turned on his blue light and stopped the automobile at “Macon and Davis Avenue” and radioed the police department that he had a “violator stopped at that point.” He walked up to the automobile on the driver’s side. He observed three persons in the automobile, two on the front seat and one in the rear. He did not know either of the occupants of the front seat; he knew and recognized William Lewis Ba-lasco, the occupant of the rear seat, as a known, heroin addict. As he walked up to the automobile, defendant alighted therefrom and stood with his door open. Officer Mayo asked him for his driver’s license. Defendant stated he did not have one; he displayed a ticket from an Alabama State Trooper who had recently issued him the ticket and had taken his driver’s license. At that time Officer Mayo said he observed a white capsule lying on the front seat of the automobile where defendant had been sitting and an “unknown quantity of the same type of white capsule” lying on a blue face cloth on the front seat where the arm rest would be when folded down. He reached and picked up the capsule closest to him. While the two were talking, Officer Lockett arrived on the scene, and he walked up to the car on the other side, and the other occupant of the front seat got out of the automobile on his side. The defendant and the other occupant of the front seat of the automobile were then arrested on an oral charge of possession of heroin. All three occupants were then taken to the Criminal Investigation Division. Thereafter, defendant was issued a ticket for traffic offenses, including failure to have a driver’s license and making an “improper pass.” The traffic charges were afterwards dismissed on account of the failure of Officer Mayo to receive notice of the time of trial and his consequent failure to appear at that time.
Officer Mayo was questioned intensively by defendant’s counsel as to his judgment as to the contents of the capsules at the time he took one from the front seat of the automobile and Officer Lockett took the other twenty-eight therefrom. A part of his testimony was as follows:
“Q. Wasn’t it possible that there was sand in those capsules on the front seat there for all you knew?
“A. Not anything that fine, no, sir.
“Q. Pardon?
“A. Not that fine a granual, no, sir.
*1165 “Q. Not that fine a granual. Isn’t it possible it was salt? Salt is fine, isn’t it?
“A. It could have been.
“Q. It could have been any number of legal substances, could it not, Officer Mayo?
“A. It’s possible.
“Q. And you didn’t have any other knowledge that anyone had given you that this might have been heroin transported in this car, is that correct?
“A. Other than the fact that the subject in the back seat was a known heroin addict.
[[Image here]]
“Q. Alright. And it is your testimony that for all you knew that could have been salt or some other substance in the capsules. That’s correct, isn’t it?
“A. It could have been, yes, sir.
“Q. Until it was analyzed and before it was analyzed, you really didn’t know what it was, did you?
“A. I had an idea about what it was.
“Q. You really didn’t know. You were just doing some guess work on account of William Balasco being in the back seat, right? You knew from behind that it was William Balasco and so you surmised that this was heroin rather than salt or some other substance, correct?
“A. It appeared to be what I had been taught.
“Q. It appeared to be what you had been taught? You had been to school for heroin and everything?
“A. When I was sent to the academy back in 1970, yes sir. We had a class on narcotics — .”
Officer Mayo also testified that during the six years he had been with the Mobile Police Department he had occasion, five or six times, to seize a substance that later by analysis turned out to be heroin, and that he was familiar with how heroin looks as it is normally packaged. He said that the heroin that he had observed varied from a white to a light brown.
The parties on appeal seem to agree, as they and the trial court did on the trial, that the opinion of Mr. Justice Bloodworth in Kinard v. State, Ala., 335 So.2d 924, is dispositive of the crucial issue now presented and that whether the disposition is favorable to one party or the other is dependent upon whether the facts in Kinard are distinguishable in material respects from the facts in the case under review. If not, we must reverse, in accordance with what was held in Kinard in approving the dissenting opinion of Judge Bookout in Kinard v. State, Ala.Cr.App., 335 So.2d 916, 921.
In Kinard, supra, the facts were that the truck of appellant was stopped solely for “an I.D. check”; that the officer walked to the passenger’s side of the truck, “opened the door, shined his flashlight in the front of the van and saw a cellophane bag, in the ashtray, with some ‘small pink pills’ in it,” which the officer, or another officer with him, took out of the ashtray, reached under the dash and took out a “couple of prescription bottles” with “some pills” therein, other cellophane bags of pills, and “some marijuana.” He was tried and convicted of possession of marijuana for personal use. It was held by our Supreme Court that the “plain view” exception to the general rule that a search must be conducted pursuant to a valid search warrant did not apply for two reasons: (1) there was no prior justification for the initial intrusion into the van by the officer and (2) the incriminating nature of the object in “plain view” was not apparent to the officer at the time of its seizure.
As to (1), the facts in instant case are diametrically opposite to those in Kinard, supra. Here there was no intrusion of any kind into the car by either officer prior to the observance of the contraband on the driver’s seat of the automobile. He had not opened the door, as the officer had done in Kinard. Everything that he had done at that time was well within his right and within the sphere of his duty.
As to (2), a resolution of the question is more difficult. There is a significant similarity between the facts here and those in Kinard, supra, but we conclude that those in the one are materially distinguishable from those in the other.
*1166 In holding in Kinard, supra, that the incriminating nature of the object in “plain view” was not apparent to the officer at the time of its seizure, the Supreme Court relied upon Shipman v. State, 291 Ala. 484, 282 So.2d 700, in which it was held that
“For an item in plain view to be validly seized, the officer must possess some judgment at the time that the object to be seized is contraband and that judgment must be grounded upon probable cause. The record in this cause reveals that this requirement has not been met.”
Although the officer was not asked the specific question whether it was his judgment or opinion at the time of the seizure of the capsules that they contained heroin, there can hardly be any doubt that such was his judgment and opinion, even though the very nature of the particular contraband is such that a chemical analysis, or other scientifically approved test, is necessary to assure certainty, and even then certainty may not be present. The experience of the officer as to heroin, the resemblance of the contraband to the heroin the officer had observed, the particular location of the capsules at the time, the large number of the capsules, their conformity in general in color and other visible characteristics to heroin capsules, and the fact that the officer knew at the time that a heroin addict was in the back seat of the automobile, are not consistent, in our opinion, with any conclusion to the effect that he did not have reasonable cause for believing that the capsules contained heroin.
It is to be noted that at the conclusion of Officer Mayo’s testimony on the hearing on the motion to suppress, he was asked by State’s counsel whether he had probable cause to believe that it was heroin and that defendant’s counsel objected to such question, which was never answered. By overruling the motion to suppress, the trial court concluded, and we agree, that there was probable cause for believing that the capsules contained heroin, which justified their seizure.
Our review of the record convinces us that there was no error prejudicial to defendant and that the judgment appealed from should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge Leigh M. Clark, serving as a judge of this Court under the provisions of § 6.10 of the New Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment below is hereby
AFFIRMED.
All the Judges concur.